AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
### for the
Eastern District of Virginia

FILED

AUG - 2 2018

CLERK, U.S. DISTRICT COURT
RICHMOND, VA

In the Matter of the Search of  )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )   Case No.   3:18sw184
One ZTE model Z223 cellphone bearing IMEI # )
868899021203258 )
)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
SEE AFFIDAVIT, ATTACHMENT A

located in the _____Eastern_____ District of _____Virginia_____ , there is now concealed *(identify the person or describe the property to be seized)*:
SEE AFFIDAVIT, ATTACHMENT B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC Section 841 | Possession with Intent to Distribute Cocaine HCl |

The application is based on these facts:
SEE AFFIDAVIT

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Robert Puleo, SA DEA
*Printed name and title*

Sworn to before me and signed in my presence.

Date: AUGUST 2, 2018

/S/
David J. Novak
United States Magistrate Judge
*Judge's signature*

City and state:  Richmond, Virginia

Honorable David J. Novak, U.S. Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| |
|---|
| IN THE MATTER OF THE SEARCH OF (1) One IPhone model A1662 cellphone bearing IMEI # 356601081740792, and (2) one AT&T cellphone model Z223 bearing IMEI #868899021203258, S/N: 325360252075. These cellular phones are currently located at the DEA Richmond District Office, 111 Greencourt Road, Richmond, Virginia |

Case No.   3:18SW184
185

**AFFIDAVIT IN SUPPORT OF AN
APPLICATION UNDER RULE 41 FOR A
WARRANT TO SEARCH AND SEIZE**

I, Robert Puleo, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—two electronic devices—which are currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2.      I am a Special Agent with the Drug Enforcement Administration ("DEA"), and have been since August 1999.   I have received extensive training in the investigation and detection of controlled substance traffickers.   I have conducted and assisted in investigations into the unlawful possession and possession with the intent to distribute controlled substances, and their associated conspiracies in violation of Title 21, United States Code, Sections 841(a) and 846.  I have participated in the preparation and execution of numerous arrest and search warrants for criminal offenses involving the distribution and conspiracy to distribute controlled

1

substances. I am aware that methamphetamine is a Schedule II Controlled Substance and I am familiar with the methods traffickers use to conduct their illegal activities to include communication methods, vehicles, text messaging, asset management, and narcotics transactions.

3.     This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter. The information provided is based upon my personal knowledge, or that of other sworn law enforcement officers participating in this investigation.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

1.     The property to be searched is (1) One IPhone model A1662 cellphone bearing IMEI # 356601081740792 and (2) one AT&T cellphone model Z223 bearing IMEI #868899021203258, S/N: 325360252075 (hereinafter the SUBJECT DEVICES). The SUBJECT DEVICES are currently located at the DEA Richmond District Office, 111 Greencourt Road, Richmond, Virginia.

2.     The applied-for warrant would authorize the forensic examination of the SUBJECT DEVICES for the purpose of identifying electronically stored data particularly described in Attachment B.

## RELEVANT STATUTORY PROVISIONS

3.     **Possession with Intent to Distribute Cocaine HCl**: 21 U.S.C. §§ 841 (a)(1) .

## TECHNICAL TERMS

4.     Based on my training and experience, I use the following technical terms to convey the following meanings:

        a.  **Wireless telephone**: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication

2

through radio signals.  These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones.  A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone.  In addition to enabling voice communications, wireless telephones offer a broad range of capabilities.  These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet.  Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b.  **Digital camera**:  A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film.  Digital cameras use a variety of fixed and removable storage media to store their recorded images.  Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader.  Removable storage media include various types of flash memory cards or miniature hard drives.  Most digital cameras also include a screen for viewing the stored images.  This storage media can contain any digital data, including data unrelated to photographs or videos.

3

c.  **Portable media player**:  A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files.  However, a portable media player can also store other digital data.  Some portable media players can use removable storage media.  Removable storage media include various types of flash memory cards or miniature hard drives.  This removable storage media can also store any digital data.  Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d.  **IP Address**: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet.  An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178).  Every computer connected to the Internet must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination.  Most Internet service providers control a range of IP addresses.  Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

e.  **Internet**: The Internet is a global network of computers and other electronic devices that communicate with each other.  Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

4

5.    Based on my training, experience, and research, I know the SUBJECT DEVICES have capabilities that allow them to serve as a wireless telephone, digital camera, portable music/media player, and send emails, and/or text messages.  In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## **PROBABLE CAUSE**

6.    Applicant certifies that the Drug Enforcement Administration ("DEA") is conducting a criminal investigation involving the trafficking of cocaine HCl in Virginia and the investigation continues in connection with possible criminal violations including, among others, possession with the intent to distribute cocaine HCl, in violation of 21 U.S.C. § 841; that it is believed that a subject of the investigation has used a cellular telephone assigned the IMEI numbers 356601081740792 and 868899021203258, in furtherance of the target offense; that on May 31, 2018, a subject identified as Manuel Guillen was in possession of approximately 693 grams of cocaine HCl in Greensville County, Virginia, when a lawful traffic stop was conducted by a Virginia State Police Trooper on the vehicle Guillen was driving.

7.    The Trooper identified the driver of the vehicle (Manuel Guillen) by the New York driver's license which Guillen provided to the Trooper at the time of the stop.  The vehicle was also occupied by two unknown passengers.  While speaking with Guillen, the Trooper detected the odor of marijuana coming from within the vehicle.  The Trooper returned to his vehicle and requested back up while running Guillen's information.  Guillen's license came back as suspended in the database.

8.    Once backup arrived, both Troopers approached Guillen's vehicle on opposite sides.  Trooper Marcos Hernandez went to the driver's side and could still detect the odor of

5

marijuana. Guillen was asked to step out of the vehicle so Trooper Hernandez could explain the summons. Guillen looked into Trooper Hernandez eyes and with a smile on his face said "no," while at the same time Guillen was attempting to put the vehicle in gear. Trooper Hernandez asked Guillen "are you going to run?" Guillen looked back at Trooper Hernandez and with an even bigger smile on his face replied "yep" and sped off with Trooper Hernandez' right hand still touching the roof of Guillen's car.

9.      Both Troopers returned to their vehicles to pursue Guillen, who was approximately a quarter of a mile ahead. Guillen was observed driving in and out traffic and using the right shoulder to pass traffic. Trooper Hernandez's radar clocked Guillen at 130 miles per hour and Trooper Hernandez realized he was not making any progress catching up to Guillen.

10.     Guillen attempted to exit Interstate 95 onto Route 58 eastbound but was still travelling too fast for that exit ramp. Guillen's vehicle struck the end cap of the guard rail, went airborne and landed at the bottom of an embankment that has an approximate ten-foot drop. Guillen continued to drive for approximately 250 feet up an embankment and struck a second guard rail on the off ramp to southbound Interstate 95.

11.     At this time Guillen's vehicle was not drivable. The front and rear passengers of Guillen's vehicle exited on the passenger side and ran into the woods. Guillen exited the vehicle on the driver's side, ran to the rear of his vehicle, and tried to open the trunk. Guillen was unable to open the trunk and then ran into the woods. Guillen was apprehended by the City of Emporia Police Department, approximately 40 minutes after the crash. Guillen had removed the shirt he was wearing when Trooper Hernandez originally made contact with him in an attempt to disguised himself and be able to escape. The other two passengers were not apprehended.

6

12.     Trooper Hernandez conducted a detailed search of the vehicle. Inside the vehicle between the driver seat and the center console Trooper Hernandez located 25 small bags containing what appeared to be marijuana inside a black plastic bag. Inside the trunk of the vehicle, Trooper Hernandez located approximately 693 grams of a white powdery substance (later confirmed by the DEA laboratory as cocaine HCl) inside a camouflage backpack, completely sealed in a zip-lock bag and in a vacuum seal clear bag. Two cell phones, one IPhone and one black flip phone (the SUBJECT DEVICES) were also located within the vehicle compartment. The marijuana was field tested and tested positive for marijuana.

13.     Virginia State Police transferred the cocaine HCl and SUBJECT DEVICES recovered from Guillen's vehicle at his arrest to SA Puleo. SA Puleo was able to obtain the IMEI number associated with the cell phones which were printed on each device.

14.     Based on my training and experience, and after having consulted with other experienced narcotics agents and detectives, your Affiant knows that cell phones are one of the primary tools utilized by distributors of illegal narcotics to communicate. These communications occur between sources of supply, drug transporters, facilitators, and customers. These conversations include drug pricing, drug quantity, meeting locations, information about drug dealer's customers, associates, addresses, and sources of supply. These conversations take place through phone calls, text messages, multimedia messages, and numerous third-party applications. Your Affiant knows that that Guillen utilized a cell phone and believes that this cell phone was employed to conduct and setup illegal drug transactions. Your affiant believes that the cell phones recovered from Manuel GUILLEN during his arrest on May 31, 2018, will contain information that will help identify GUILLEN's source of supply, assets, and other co-conspirators. The information likely to be obtained from the data recovered from the cell

7

phones obtained during GUILLEN's arrest are relevant and material to the ongoing criminal investigation.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

15. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

16. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Device because:

    a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

    b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

    c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

8

d. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

17. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the Devices consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the Devices to human inspection in order to determine whether it is evidence described by the warrant.

18. *Manner of execution.* Because this warrant seeks only permission to examine Devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premise. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

19.     I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Devices described in Attachment A to seek the items described in Attachment B.

Respectfully submitted,

Robert J. Puleo
Special Agent
DEA

Subscribed and sworn to before me
On August 2, 2018:

/S/

David J. Novak
United States Magistrate Judge

10

## ATTACHMENT A

20.        The property to be searched is: (1) ) One IPhone model A1662 cellphone

bearing IMEI # 356601081740792, and (2) one AT&T cellphone model Z223 bearing  IMEI

#868899021203258, S/N: 325360252075.  These cell phones are referred to as SUBJECT

DEVICES in this affidavit.  The SUBJECT DEVICES are currently secured at the DEA

Richmond District Office, 111 Greencourt Road, Richmond, Virginia.

This warrant authorizes the forensic examination of the Devices for the purpose of

identifying the electronically stored information described in Attachment B.

1

## ATTACHMENT B

1.  All records on the SUBJECT DEVICES described in Attachment A that relate to violation of 21 U.S.C. §§ 841 (a)(1), including:

   a.  Notes, ledgers, messages, and similar records relating to the transportation, ordering, purchasing, and distribution of controlled substances.

   b.  Address books, phone books, applications ("Apps"), and similar records reflecting names, addresses, telephone numbers and other contact or identification data.

   c.  Applications and records relating to drug trafficking income, and expenditures of money and wealth, including bank records.

   d.  Calendars, applications, and other records referencing meetings, schedules, and interstate and foreign travel.

   e.  Digital photographs, videos, or audio recordings of confederates, assets or controlled substances, the spending of drug proceeds, and specific locations connected to the user of the phone.

   f.  Stored communications, including text messages, MMS messages, and voicemails.

   g.  Any subscriber or owner information for the cellular telephones.

   h.  Any cellular telephone records, and telephone books or lists, or receipts relating to the acquisition and purchase of cellular telephones, or minutes purchased or applied to cellular telephones.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

2.  Evidence of user attribution showing who used or owned the SUBJECT DEVICES at the time the things described in this warrant occurred, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

1